**Daniel ZWIBEL, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 18, 2003.

Decided Sept. 24, 2003.

600

Dante G. Bertani, Greensburg, for appellant.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Daniel Zwibel appeals the order of the Court of Common Pleas of Westmoreland County (trial court) denying his appeal from the suspension of his operator's license. We affirm and remand for assessment of reasonable counsel fees pursuant to Pa. R.A.P. 2744.

The trial court found the following facts. At approximately 11:45 p.m. on January 14, 1999, Officer John Simko of the Borough of Irwen Police Department was traveling in a marked police car at a speed of 35 to 40 miles per hour (mph) in a 40–45 mph speed zone. The roads were icy following a heavy snowfall. Officer Simko observed Zwibel pass him in the "fast lane" in a truck with a snow plow attached to the front, traveling 15 to 20 mph faster than the patrol car. The officer then observed Zwibel swerve abruptly into his

lane, still at a faster rate of speed than the patrol car. Zwibel then turned left through a red light and entered the parking lot of a shopping center. While making his left turn, Zwibel hit a cement highway barrier with his plow.

After stopping Zwibel's vehicle, Officer Simko observed that Zwibel had bloodshot eyes, slurred speech, and an overwhelming odor of alcohol on his person. He was also belligerent and confrontational. Moreover, he was unable to stand outside of his vehicle on his own power. For that reason, Officer Simko did not administer any field sobriety tests. Instead, he arrested Zwibel for driving under the influence and careless driving. He then read to Zwibel the implied consent (or O'Connell) warnings regarding chemical tests.[1] Zwibel responded by stating that he was not going to take the test. Nevertheless, Officer Simko drove him to a nearby hospital to provide a second opportunity to submit to a blood test. Zwibel again refused at the hospital, maintaining his confrontational attitude. Although Zwibel never indicated to Officer Simko that he did not understand or was confused regarding the request for a blood test, he did tell the officer that he was on medication or pain relievers.

As a result of his refusal to submit to a chemical test, Zwibel's operator's license was suspended by the Department of Transportation (Department) for one year pursuant to Section 1547(b) of the Vehicle Code, as amended, 75 Pa.C.S. § 1547(b). Zwibel appealed the suspension, and a hearing de novo was convened before the trial court. Officer Simko testified on be-

half of the Department, and his testimony provided the basis for the trial court's factual findings as summarized above. Zwibel also testified and submitted the deposition testimony of Frank H. Kush, M.D.

Zwibel testified that, contrary to the testimony of Officer Simko, he did tell the officer that he would submit to a blood test. In fact, he testified that he actually gave blood at the hospital during a time when Officer Simko left the room to make a phone call. Zwibel failed to introduce any corroborating evidence, such as the test results or testimony from hospital personnel, to support this allegation, and Officer Simko testified on rebuttal that he never left Zwibel alone at the hospital. The officer explained that because of Zwibel's unruliness, he did not let him out of his sight and that nobody at the hospital drew blood from Zwibel.

Zwibel also testified that in the past he had brain surgery and that at the time of the incident he was taking a number of medications. In support of his testimony regarding his medical condition he offered the testimony of Dr. Kush, an internist who had treated Zwibel since 1991. Dr. Kush testified that in 1992, Zwibel had a surgical resection of a frontal parietal subdural hematoma, and that he also suffered from cervical and lumbar problems. He further testified that Zwibel was on several medications, including pain medications, and that these drugs could cause confusion, lethargy, fatigue, and occasional agitation. Dr. Kush testified, nevertheless, that Zwibel was able to drive while taking

---

1. In Department of Transportation, Bureau of Traffic Safety v. O'Connell, 521 Pa. 242, 555 A.2d 873 (1989), our Supreme Court held that an arresting officer has a duty to clarify to the operator that the right to counsel as provided by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is inapplicable to a chemical test request. Furthermore, the officer is required to inform the operator that refusal to submit to a chemical test of intoxication will result in a license revocation. Zwibel does not argue that he was not properly provided with these warnings.

these medications, but that they should not be combined with alcohol. Dr. Kush explained that the consumption of alcohol could lead more quickly to intoxication in combination with the medications than without them. Dr. Kush could not rule out alcohol as a contributing factor to Zwibel's behavior or any alleged inability to understand. Although Zwibel had testified that at the time of the traffic stop, he had been plowing snow for 48 hours straight, Dr. Kush testified that he saw Zwibel on the morning of the traffic stop and that there was no indication that he was particularly tired because of having been up for many hours plowing.

At the conclusion of the hearing, the trial court denied Zwibel's appeal, determining that Officer Simko had probable cause to stop Zwibel's vehicle and that Zwibel had refused to submit to a chemical test when requested to do so. The trial court specifically found the testimony of Officer Simko to be credible and that of Zwibel to be "incredible." Trial Court Opinion, p. 8. This appeal followed.

■ In a driver's license suspension appeal, this Court's scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992). Additionally, we must review the evidence in the light most favorable to the party that prevailed before the trial court. *Department of Transportation, Bureau of Driver*

*Licensing v. Malizio,* 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992).

Zwibel raises the following issues: (1) Whether Officer Simko had reasonable grounds to believe Zwibel was "in violation of the law thereby permitting the officer to pursue and detain" him; (2) whether Officer Simko had reasonable grounds to believe that Zwibel was operating his vehicle under the influence of alcohol or a controlled substance; and (3) whether the Department "sustained its burden" of proving that Zwibel made a knowing and voluntary refusal to submit to a blood test.

Zwibel's first argument is that Officer Simko failed to have "probable cause" under the Fourth Amendment of the United States Constitution for making the traffic stop and "seizing" Zwibel.[2] This argument not only demonstrates a flagrant ignorance or rejection of the applicable law existing for approximately 30 years, but also suggests a contemptuous attitude in that as the trial court clearly stated in its written opinion with clear reference to Supreme Court authority, an arresting officer need only have reasonable grounds for an arrest under the Implied Consent Law, not probable cause, which relates to criminal proceedings. *See, e.g., Malizio* (constitutional attacks on the traffic stop have no bearing on the resolution of a license suspension appeal); *Department of Transportation, Bureau of Traffic Safety v. Barrett,* 22 Pa.Cmwlth. 559, 349 A.2d 798 (1976) (probable cause is a criminal law concept that relates to the validity of an arrest and is inapplicable to a civil license suspension appeal).[3]

---

2. Although in Zwibel's Statement of Questions he uses the phrase "reasonable grounds," his argument is based on a Fourth Amendment probable cause analysis with reference to Pennsylvania Supreme and Superior Court criminal cases, almost wholly ignoring authority addressing the requirements of a license suspension appeal.

3. Our research indicates that this Court may have first determined that the criminal requirements of a valid arrest are inapplicable to a civil license suspension proceeding in *Miles v. Department of Transportation, Bureau of Traffic Safety,* 8 Pa.Cmwlth. 544, 304 A.2d 704 (1973). To ignore this principle, consistently affirmed by this Court, is not justified.

To establish that a suspension of operating privileges was proper, the Department must prove at a statutory appeal hearing that the licensee (1) was arrested for driving while under the influence by a police officer who had *reasonable grounds* to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203 (1999).[4] An officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol "if a reasonable person in the position of a police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol." *McCallum v. Commonwealth*, 140 Pa.Cmwlth. 317, 592 A.2d 820, 822 (1991). The issue of reasonable grounds is decided on a case-by-case basis, and an officer's reasonable grounds are not rendered void if it is later discovered that the officer's belief was erroneous. *Id.* The officer's belief must only be objective in light of the surrounding circumstances. Moreover, the existence of reasonable alternative conclusions that may be made from the circumstances does not necessarily render the officer's belief unreasonable. *Id.*

In this case, the trial court found credible the testimony of Officer Simko that he observed Zwibel pass his vehicle at a high speed on icy road conditions, abruptly swerve into another lane, proceed through a red light, and strike his plow on a traffic barrier as he was turning. Officer Simko also credibly testified that Zwibel's eyes were bloodshot, his speech was slurred, and his body emitted a strong odor of alcohol. Further, Zwibel took a long time to find his driver's license, he was unable to stand unassisted when he exited the truck, and he became belligerent and confrontational. We are without the slightest hesitation in holding that the trial court did not err when it determined that a reasonable person in the position of Officer Simko, viewing the above facts and circumstances, would conclude that Zwibel was operating his vehicle while under the influence of alcohol. *See Pearson v. Commonwealth*, 122 Pa.Cmwlth. 91, 551 A.2d 394 (1988) (a motorist's odor of alcohol, glassy eyes, and belligerent behavior provided reasonable grounds for the conclusion that he had been operating while under the influence of alcohol); *Department of Transportation v. Berta*, 120 Pa. Cmwlth. 558, 549 A.2d 262 (1988) (reasonable grounds to believe that a motorist had been operating a vehicle while under the influence of alcohol existed when the motorist was found seated in a parked car in a restricted area and was uncooperative, belligerent, and had the odor of alcohol on her breath).

Nevertheless, in Zwibel's second issue, he attempts to argue that Officer Simko lacked reasonable grounds to suspect that he had been operating while under the influence of alcohol. Ignoring the trial court's credibility findings, Zwibel contends that at worst the evidence showed (1) a little erratic driving; (2) slurred speech and bloodshot eyes, which he contends could be attributable to his medical condition; (3) an overwhelming smell of alcohol, which Zwibel posits could be attributable to "near beers" or no-alcohol beers; (4) belligerence and confrontationism, which Zwibel seems to infer he did not demonstrate, contending that Officer

---

4. Zwibel does not dispute the second and fourth requirements.

Simko's testimony regarding this behavior simply revealed his "bias"; and (5) Officer Simko's failure to allow Zwibel to perform and presumably pass field sobriety tests. Further, Zwibel argues that there is no evidence that he "was under the influence." Zwibel also attempts to bolster this argument by alleging that the criminal charges against him arising from this matter were dismissed.

■■■ The fact that Zwibel fails to cite any relevant case law in support of his argument, except for a reference to the Supreme Court taking judicial notice of the existence of near-beers or no-alcohol beers,[5] underscores his failure to address even the rudimentary tenets of established law with regard to the issue of whether Officer Simko had reasonable grounds for his suspicions that he was operating under the influence of alcohol. First, we observe that we have long ago established that the test for determining if reasonable grounds exist is "not very demanding." *Gasper v. Department of Transportation, Bureau of Driver Licensing*, 674 A.2d 1200, 1202 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 666, 685 A.2d 546 (1996). Second, the Department's burden to show that the officer had reasonable grounds is a different issue than whether the licensee can later show at the *de novo* hearing that there were other reasons for his or her glassy eyes, slurred speech, or unsteady gate. It is not the Department's burden to show evidence as to the cause of these or other indicia of being under the influ-

ence of alcohol. It is the licensee's burden to introduce evidence that alcohol played no part in these matters once the Department had proved, as it did here, that he was arrested for driving under the influence, that he was requested to submit to a chemical test, that he refused to submit, and that he was given the appropriate warnings regarding the consequences of his refusal. *Dailey v. Department of Transportation, Bureau of Driver Licensing*, 722 A.2d 772 (Pa.Cmwlth.1999). Here, Zwibel failed to meet that burden.

Third, we have long ago rejected the argument that the Department is required to show that the operator was impaired to a degree that he or she was incapable of safe driving. *Simpson v. Commonwealth*, 105 Pa.Cmwlth. 635, 525 A.2d 444 (1987).[6] Fourth, the Supreme Court long ago established that a licensee's guilt or innocence on the related criminal charges has no bearing on license suspension proceedings. *Department of Transportation v. Wysocki*, 517 Pa. 175, 535 A.2d 77 (1987). Fifth, we have held that it is unnecessary for a licensee to fail field sobriety tests in order for reasonable grounds to exist for suspecting that the licensee was operating under the influence of alcohol. *DiPaolo v. Department of Transportation, Bureau of Driver Licensing*, 700 A.2d 569 (1997). Moreover, Zwibel could not even stand up on his own power in order to perform these tests.

■■■ Sixth, Zwibel's argument regarding near beer or no-alcohol beer is absurd

---

5. *Commonwealth v. Tau Kappa Epsilon*, 530 Pa. 416, 609 A.2d 791 (1992), cited by Zwibel, involved a criminal prosecution of fraternities for supplying alcoholic beverages to minors. Zwibel fails to set forth any logical argument as to how this case relates to the issue of whether an officer had reasonable grounds to suspect that a licensee was operating under the influence of alcohol in a civil license suspension matter.

6. We believe that this legal principle addresses Zwibel's undeveloped argument set forth in the following sentences: "The imperative issue being [']while under the influence.['] There is not a basis established from which that final ingredient can be drawn." Zwibel's Brief, p. 11.

since Officer Simko did not base his suspicions on the fact that Zwibel held a beverage in his hand that appeared to be beer, but, in part, on the fact that Zwibel exuded a strong odor of alcohol. Finally, Zwibel simply appears to be arguing the facts to this appellate body in the hopes of a different result. The trial court, however, is the fact finder in a license suspension appeal, and it may accept or reject any testimony in whole or in part, subject only to review under the abuse of discretion standard. *DiCola v. Department of Transportation, Bureau of Driver Licensing,* 694 A.2d 398 (1997). Zwibel has set forth no basis to conclude that the trial court abused its discretion. Its findings of fact are all based on consistent testimony in the record.

In his final argument, Zwibel contends that the Department failed to "sustain *its* burden" to show that he made a voluntary, conscious, and knowing decision to refuse to submit to a blood test. Once again, it must be noted that once the Department establishes its *prima facie* burden of showing that the licensee was arrested on reasonable grounds of operating under the influence, was asked to submit to a test, refused to do so, and was provided the appropriate warnings, the burden then *shifts to the licensee* to establish that his or her refusal of the chemical test was not knowing or conscious or that he or she was physically unable to take the test. *Department of Transportation, Bureau of Driver Licensing v. Boucher,* 547 Pa. 440, 691 A.2d 450 (1997). Needless to say, this is well-established law. Thus, Zwibel's argument is facially meritless.

Zwibel's argument, however, is rendered momentarily interesting by the fact that it rests on two different and completely opposing theories: one, that Zwibel *did actually submit* to the blood test when Officer Simko was not looking; and two, that Zwi-

bel did not make a knowing and conscious *refusal to take the test* because of his medical condition and medications as described by Dr. Kush. While this is not as dramatic a situation by far, one is reminded of Joan dePlucelle in Shakespeare's Henry VI, Part I, who attempted to defend herself on a capital charge by stating that she was a virgin and then, noticing that this defense would not succeed, told the tribunal that she was with child. In any event, the trial court found Zwibel's testimony not credible and Officer Simko's testimony credible regarding the issue of whether Zwibel actually submitted to the test. The trial court also found Dr. Kush's testimony not persuasive with respect to whether Zwibel had difficulty understanding the events of the evening of his arrest. Further, Dr. Kush could not rule out alcohol as a contributing factor to Zwibel's behavior, and therefore Zwibel could not rely upon Dr. Kush's testimony to establish that he did not make a conscious or knowing refusal to take the blood test. *Dailey.* Finally, Zwibel himself never testified that he was confused about what was required of him from Officer Simko. His attorney argued to the trial court that Zwibel understood the implied consent warnings and that he agreed to take the test. Notes of Testimony (N.T.), p. 54. *See also* N.T., p. 41. Thus Zwibel's arguments are utterly baseless.

The Department requests that we assess counsel fees because of the frivolous nature of Zwibel's arguments. A frivolous appeal has been defined as one lacking in any reasonable basis in either law or fact. *Smith v. Pennsylvania Board of Probation and Parole,* 524 Pa. 500, 574 A.2d 558 (1990). We believe that Zwibel's appeal has achieved that dubious status.

Pa. R.A.P. 2744 provides that reasonable counsel fees may be awarded for an appeal that "is frivolous or taken solely for delay

or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." We have held that an appeal is frivolous, and therefore warrants the imposition of attorney's fees, when no justiciable question has been presented and the appeal is easily recognized as lacking any merit because there is little prospect of success. *Mihadas v. Department of Transportation*, 741 A.2d 249 (Pa.Cmwlth.1999). We have further held that basing an appeal solely on facts contrary to those found by the trial judge may result in a frivolous appeal for which attorney's fees are warranted. *Postgate v. Department of Transportation, Bureau of Driver Licensing*, 781 A.2d 276 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 689, 796 A.2d 320 (2002).

We are mindful that the imposition of counsel fees is a step not to be taken lightly. In this instance, however, it is not possible to divorce the determination of whether the imposition of counsel fees is warranted with the fact that the trial court in this case issued a careful and comprehensive ten-page opinion that not only drew all relevant credibility determinations and findings of fact, but also quite clearly and accurately set forth the law with regard to the burdens of the Department and the licensee in license suspension appeals. The trial court explained precisely why Zwibel's probable cause argument was irrelevant and further explained why the Department met its burden and why he did not meet his under the facts found to be credible. Yet, in the present appeal, Zwibel wholly ignores the trial court's opinion and the supporting cases set forth therein. Instead, Zwibel reasserts (1) his facially meritless argument that Officer Simko lacked probable cause for the traffic stop and arrest; (2) his argument that

Officer Simko lacked reasonable grounds to suspect that he had been operating while under the influence of alcohol based upon Zwibel's version of the facts, not those found by the trial court; and (3) his facially meritless argument that the Department failed to satisfy *its* burden of showing that Zwibel made a voluntary, conscious, and knowing decision to refuse to submit to a blood test. With respect to the latter argument, not only does Zwibel ignore the trial court's explanation in its opinion that it was his burden to make this showing, but he supports his argument with two facially inconsistent and conflicting theories. The absurdity of Zwibel arguing to this Court that he *did submit* to a blood test *and* at the same time did not knowingly and consciously *refuse* to take the test, exhibits a contempt that mirrors his utter disregard of the appropriate law concerning the issues of this case that were clearly articulated in the trial court's opinion. Zwibel's appeal begs for the imposition of counsel fees.

Accordingly, the order of the trial court is affirmed, and this matter is remanded to the trial court to determine the amount of reasonable counsel fees due and owing to the Department pursuant to Pa. R.A.P. 2744. The trial court shall also determine whether the counsel fees should be paid by Zwibel, his attorney, or both, after determining the factual scenario that prompted this frivolous appeal. *See Morrell v. Department of Transportation, Bureau of Traffic Safety*, 133 Pa.Cmwlth. 338, 575 A.2d 171 (1990).

### ORDER

AND NOW, this 24th day of September, 2003, the order of the Court of Common Pleas of Westmoreland County (trial court) in the above-captioned matter is hereby

affirmed, and this matter is remanded to the trial court to determine the amount of reasonable counsel fees to be paid to the Department of Transportation pursuant to Pa. R.A.P. 2744. The trial court shall also determine whether the counsel fees shall be paid by Daniel Zwibel, his attorney, or both.

Jurisdiction relinquished.