# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Marchese,           :
           Appellant      :
                   :
        v.              :   No. 1996 C.D. 2016
                   :   Submitted: June 30, 2017
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing        :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**               **FILED: September 13, 2017**

Anthony Marchese (Licensee) appeals from an order of the Court of Common Pleas of Lycoming County (trial court)[1] that dismissed his license suspension appeal from the Department of Transportation's (DOT) 18-month suspension of Licensee's operating privilege under 75 Pa. C.S. §1547(b)(1)(ii) based on his refusal to submit to a warrantless request for a blood test after being arrested for driving under the influence of alcohol or controlled substance (DUI), a violation of 75 Pa. C.S. §3802. Licensee contends Pennsylvania's Implied Consent Law, 75 Pa. C.S. §1547(a) and (b), violates the Fourth Amendment to the U.S. Constitution because it requires suspension of an individual's driving privilege based on his refusal to comply with a warrantless request to submit a sample of blood for chemical testing. For the reasons that follow, we affirm.

---

[1] The Honorable Joy Reynolds McCoy presided.

## I. Background

In November 2015, Pennsylvania State Police Trooper Adam Kirk stopped Licensee's vehicle in the City of Williamsport for violations of the Vehicle Code, 75 Pa. C.S. §§101-9805. Trooper Kirk detected a strong odor of burnt marijuana as he approached Licensee's vehicle. The trooper then directed Licensee to exit the vehicle. At that time, Trooper Kirk located a glass container that contained a green leafy residue which field tested positive for marijuana. Trooper Kirk also observed that Licensee had glassy, bloodshot eyes and a green leafy substance in his mouth. The trooper then requested that Licensee perform various field sobriety tests. Based upon Licensee's performance and Trooper Kirk's observations, the trooper placed Licensee under arrest for DUI and transported him to Williamsport Hospital.

At the hospital, Licensee declined to participate in a drug recognition evaluation (DRE). Trooper Kirk read Licensee the implied consent warnings in DOT's DL-26 form verbatim and asked Licensee to consent to withdrawal of a blood sample for chemical testing in accord with 75 Pa. C.S. §1547. Licensee refused the request. Thereafter, Trooper Kirk submitted the required paperwork to DOT.

By letter dated January 12, 2016, DOT notified Licensee that his driving privilege would be suspended for a period of 18 months as a result of his chemical test refusal. Licensee timely appealed the notice of suspension. At a hearing, DOT submitted Licensee's driving record, which included a certified record of an earlier DUI-controlled substance conviction in 2012. See Tr. Ct. Hr'g,

2

8/23/16, Ex. C-1.  In addition, Trooper Kirk testified regarding the particular circumstances of his stop of Licensee's vehicle and Licensee's refusal of the trooper's request for a blood test.

In response, Licensee presented no evidence, but asked to submit a brief regarding the effect of the U.S. Supreme Court's decision in Birchfield v. North Dakota, ___ U.S. ___, 136 S. Ct. 2160 (2016), on the case.  In Birchfield, the Supreme Court held that a state cannot criminally penalize a motorist for refusing to submit to a warrantless request for a blood test after being arrested for suspicion of DUI.  The trial court granted Licensee's request and set up a briefing schedule for the parties.

Following the submission of briefs, the trial court issued an opinion and order dismissing Licensee's appeal.  In its opinion, the trial court rejected Licensee's contention that Birchfield rendered Pennsylvania's Implied Consent Law unconstitutional.  Unlike the implied consent warnings given in North Dakota, Pennsylvania's DL-26 form does not advise a vehicle operator that it is a crime to refuse a request for a blood test under the Implied Consent Law; rather, it is a civil penalty.  As such, the trial court determined the present case was distinguishable from Birchfield, which has no effect on civil license suspensions.  Licensee appeals.[2]

---

[2] Our review in a license suspension appeal is limited to determining whether the trial court's necessary findings of fact were supported by substantial evidence or whether the court committed an error of law or otherwise abused its discretion. Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989); Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 954 A.2d 761 (Pa. Cmwlth. 2008).

## II. Discussion

### A. Argument

Licensee contends that in light of the holding in <u>Birchfield</u>, Pennsylvania's Implied Consent Law violates the Fourth Amendment to the U.S. Constitution[3] and Article I, Section 8 of the Pennsylvania Constitution[4] because it requires suspension of the driving privilege of an individual charged with DUI for refusing to submit to a warrantless request for a blood sample for chemical testing. More specifically, Licensee asserts the Supreme Court phrased the issue before it as "whether motorists lawfully arrested for drunk driving may be convicted of a crime <u>or otherwise penalized</u> for refusing to take a warrantless test measuring the alcohol in their bloodstream." <u>Birchfield</u>, ___ U.S. at ___, 136 S.Ct. at 2172 (emphasis added). With respect to blood tests, Licensee argues the Court determined that the warrant requirement applies and that warrantless searches violate a motorist's constitutional rights to be free from unreasonable searches and seizures.

In addition, Licensee argues the language in <u>Birchfield</u> stating its holding does not apply to implied consent laws merely imposing civil penalties is

---

[3] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend. IV.

[4] Article I, Section 8 provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA CONST. art. I, §8.

*obiter dicta*. Therefore, because such civil penalties were not at issue in Birchfield, Licensee asserts this language is not binding precedent.

Licensee further contends the Implied Consent Law violates the unconstitutional conditions doctrine by requiring a motorist to surrender his constitutional right to refuse a warrantless seizure of his blood in order to operate a motor vehicle on the highways of Pennsylvania. In support of his position, Licensee cites: Koontz v. St. Johns River Water Management District, ___ U.S. ___, 133 S.Ct. 2586 (2013) (unconstitutional conditions doctrine vindicates the Constitution's enumerated rights by preventing governments from coercing people into forfeiting them; Florida water management district may not require a landowner to forfeit his constitutional right to just compensation for a government taking of his property in order to obtain a building permit, extortionate demands of this sort frustrate the Fifth Amendment right to just compensation); Camara v. Municipal Court of the City and County of San Francisco, 387 U.S. 523 (1987) (city ordinance which authorized city health and safety inspectors to enter any building in the city without a warrant to perform an inspection after presenting proper credentials, and which provided for a criminal penalty if a residential tenant refused, violated tenant's Fourth Amendment rights); Frost v. Railroad Commission of State of California, 271 U.S. 583 (1926) (holding that a state, in granting privileges, may not impose conditions that require the relinquishment of constitutional rights; California statute violated private carrier's constitutional right to do business in the state by compelling him to obtain a certificate of convenience and assume, against his will, the duties and burdens of a common carrier in order to use the state's public highways).

Summarizing, Licensee asserts it is clear that DOT penalized him under the Implied Consent Law by suspending his driving privilege because he refused to submit to a warrantless request for a blood test. In accord with the unconstitutional conditions doctrine, Licensee requests that we find DOT's suspension of his driving privilege, based on his refusal of a warrantless request for a blood test, to be a violation of his constitutional rights against unreasonable searches and seizures.

## B. Analysis

Initially, we note that license suspensions, unlike the DUI proceeding, are civil, not criminal, proceedings. See Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989); Bashore v. Dep't of Transp., Bureau of Driver Licensing, 27 A.3d 272 (Pa. Cmwlth. 2011) (a licensee suspension stemming from a refusal to submit to chemical testing is an administrative proceeding separate from the criminal DUI proceeding).

Here, Licensee seeks to extend the scope of the holding in Birchfield, that a state may not impose criminal penalties on the refusal to submit to a warrantless blood test. Recently, this Court determined that Birchfield does not apply to civil license suspensions under Pennsylvania's Implied Consent Law for refusing to submit to a warrantless request for a blood sample for chemical testing following a DUI arrest. Boseman v. Dep't of Transp., Bureau of Driver Licensing, 157 A.3d 10 (Pa. Cmwlth. 2017), appeal denied, ___ A.3d ___ (Pa., No. 210 MAL 2017, filed August 22, 2017).

6

Nevertheless, Licensee asserts that civil penalties were not at issue in Birchfield, wherein the Supreme Court recognized that the petitioners did not question the constitutionality of such statutes. Therefore Licensee argues Birchfield is not binding precedent as to the constitutional validity of implied consent laws that impose civil penalties. We disagree. In particular, the Supreme Court observed: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Birchfield, ___ U.S. at ___, 136 S.Ct. at 2185 (citing Missouri v. McNeely, ___ U.S. ___, 133 S.Ct. 1552 (2013) and South Dakota v. Neville, 459 U.S. 553 (1983)). Moreover, the Birchfield Court instructed, "nothing we say here should be read to cast doubt on them." Id. at ___, 136 S.Ct. at 2185 (emphasis added).

Turning to recent Pennsylvania case law, we believe our Supreme Court's discussion in Commonwealth v. Myers, ___ A.3d ___ (Pa., No. 7 EAP 2016, filed July 19, 2017), 2017 WL 3045867, of a motorist's rights under the Implied Consent Law to refuse a warrantless blood test, is helpful here. In Myers, the Court rejected the Commonwealth's argument that the Implied Consent Law constitutes a valid exception to the warrant requirement of the Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. In holding that the Implied Consent Law does not authorize a warrantless blood test of an unconscious person, the Court reasoned the "statute cannot authorize what the Fourth Amendment or Article I, Section 8 would prohibit." Myers, slip op. at 17, ___ A.3d at ___, 2017 WL 3045867 at *8. To that end, the Court observed that the Birchfield holding supports the conclusion that despite the

7

existence of an implied consent provision, an individual must give his actual and voluntary consent at the time the blood test is requested.  See Myers, slip op. at 24-26, ___ A.3d at ___, 2017 WL 3045867 at *11.

Notably, the Supreme Court declined to address the issue of whether the civil penalties in the Implied Consent Law render the statute invalid under Birchfield.  In particular, the Court noted:

> In a future case, Birchfield may impact the constitutional validity of certain provisions of Pennsylvania's implied consent scheme.  But the instant case presents no facial constitutional challenge to any statutory provision. Accordingly, we do not consider the effect of the Birchfield decision upon our statutes.  Rather, we consider Birchfield only as it relates to our conclusion that, in the absence of actual, voluntary consent, statutorily implied consent does not dispense with the need for police to obtain a warrant before conducting a chemical test of a DUI arrestee's blood.

Myers, slip op. at 30, ___ A.3d at ___, 2017 WL 3045867 at *13.

However, in Boseman this Court determined that the rule in Birchfield, that a DUI arrestee may not be criminally prosecuted for refusing a request for a warrantless blood test, does not apply to civil license suspensions.  As discussed above, a license suspension stemming from a refusal to submit to chemical testing is a separate civil proceeding from a criminal DUI proceeding arising out of the same incident.  Bashore.  It is not a crime to refuse chemical testing under the Implied Consent Law.  Boseman.

8

By its own language, the <u>Birchfield</u> Court unequivocally stated that "<u>nothing we say here should be read to cast doubt</u>" on the constitutionality of state implied consent laws imposing civil penalties and evidentiary consequences for refusing a blood test. <u>Birchfield</u>, ___ U.S. at ___, 136 S.Ct. at 2185 (emphasis added). Contrary to Licensee's characterization of this language as *obiter dicta*, we believe the U.S. Supreme Court clearly indicated nothing in <u>Birchfield</u> questions the constitutionality of state implied consent laws imposing only civil sanctions. To that end, the Court stated: "It is another matter, however, for a State to not only insist upon an intrusive blood test, but also to impose <u>criminal</u> penalties on the refusal to submit to such a test." <u>Id.</u> (emphasis added). Therefore, the Court concluded "that motorists cannot be deemed to have consented to submit to a blood test <u>on pain of committing a criminal offense</u>." <u>Birchfield</u>, ___ U.S. at ___, 136 S.Ct. at 2186 (emphasis added).

Given the <u>Birchfield</u> Court's explicit limitation on its holding to implied consent laws imposing criminal penalties, we reject Licensee's contention that it must logically be extended to render unconstitutional implied consent laws which provide for only civil penalties for refusal of a blood test. <u>Boseman</u>. Such an interpretation would be contrary to the U.S. Supreme Court's limiting language in <u>Birchfield</u>.

Further, we also reject Licensee's contention that Pennsylvania's Implied Consent Law violates the unconstitutional conditions doctrine by conditioning a person's driver's license on the implied consent to submit to a warrantless blood test in violation of his Fourth Amendment rights against

9

unlawful searches and seizures. It is well settled in Pennsylvania that driving is a privilege, not a property right. Plowman v. Dep't of Transp., Bureau of Driver Licensing, 635 A.2d 124 (Pa. 1993); Alexander v. Dep't of Transp., Bureau of Driver Licensing, 880 A.2d 552 (Pa. Cmwlth. 2005). To obtain the benefit of such a privilege, a driver must abide by the laws of the Commonwealth relating to the privilege. Alexander. In Department of Transportation, Bureau of Driver Licensing v. Scott, 684 A.2d 539, 544 (Pa. 1996), our Supreme Court stated:

> Driving is a civil privilege conferred on state residents who meet the necessary qualifications. 75 Pa. C.S. §1501. Under the terms of the Implied Consent Law, one of the necessary qualifications to continuing to hold that privilege is that a motorist must submit to chemical sobriety testing when requested to do so, in accordance with the prerequisites of the Implied Consent Law, by an authorized law enforcement officer. The obligation to submit to testing is related specifically to the motorist's continued enjoyment of his operator's license.

When a licensee refuses to submit to chemical testing, DOT is statutorily required to impose a civil license suspension. 75 Pa. C.S. §1547(b). Nevertheless, a licensee has the absolute right to revoke his consent and refuse to submit to chemical testing. Myers.

Regardless, Licensee contends the Implied Consent Law imposes an unconstitutional condition upon his driving privilege by requiring that he submit to a warrantless request for a blood test under pain of a license suspension. We disagree. In order to uphold a license suspension, DOT must establish: (1) that the licensee was arrested for DUI by a police officer who had reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or

10

a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension. Regula v. Dep't of Transp., Bureau of Driver Licensing, 146 A.3d 836 (Pa. Cmwlth. 2016). An officer has reasonable grounds to believe an individual was operating while under the influence if a reasonable person in the position of a police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude the individual operated his vehicle while under the influence of alcohol or a controlled substance. Id.

The standard of reasonable grounds to support a license suspension is akin to the reasonable suspicion standard of the Fourth Amendment. Id. (citing Terry v. Ohio, 392 U.S. 1 (1968)). The basis for the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. Id. (citing Terry; Mapp v. Ohio, 367 U.S. 643 (1961)). As discussed above, license suspensions are civil, not criminal proceedings. O'Connell; Boseman; Regula; Bashore. As we noted in Boseman, the U.S. Supreme Court has not extended the Fourth Amendment's exclusionary rule to proceedings other than criminal trials. See Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357 (1998).

The Birchfield Court noted that efforts to combat drunk driving across the nation, including implied consent laws, have been remarkably successful. All 50 states have adopted implied consent laws that require motorists, as a condition of driving within the state, to consent to blood alcohol testing following an arrest for suspicion of DUI. Birchfield (citing McNeely). Suspension or revocation of

the motorist's driver's license remains the standard legal consequence for refusal. Id. Therefore, because a license suspension under Pennsylvania's Implied Consent Law does not involve criminal penalties and thus does not implicate Fourth Amendment rights, a warrantless request for a blood test under the Implied Consent Law, based upon a reasonable suspicion of DUI, does not violate the Fourth Amendment or the unconstitutional conditions doctrine. Birchfield; Boseman; Regula.

Moreover, none of the U.S. Supreme Court cases Licensee cites support his contention that the Implied Consent Law places an unconstitutional condition on his driving privilege. As we noted in Delchester Developers, L.P. v. Zoning Hearing Board, 161 A.3d 1081 (Pa. Cmwlth. 2017), unconstitutional conditions cases generally arise in the context of land development or zoning approval process and involve a request that a developer dedicate or turn over property to the municipality, or something similar, in order to obtain a permit. This results in a taking without just compensation. See, e.g., Koontz (Florida water management district may not require landowner to forfeit Fifth Amendment right to just compensation for taking by requiring landowner to fund offsite mitigation projects lacking a proper nexus and proportionality to the impacts of the proposed development).

In addition, Camara is distinguishable because it involved the imposition of a criminal penalty upon tenants who refused warrantless searches of their leasehold by municipal inspectors. The Court determined the municipal ordinance authorizing such inspections violated the tenants' Fourth Amendment

rights. Likewise, <u>Frost</u>, a 1926 case wherein the U.S. Supreme Court held invalid a California statute conditioning a private carrier's access to its public highways upon the carrier's agreement to obtain a certificate of convenience and assume the duties and burdens of a common carrier, is of little help in the present case.

The touchstone of Fourth Amendment analysis is reasonableness. <u>Birchfield</u>. Here, Pennsylvania's Implied Consent Law subjects a Pennsylvania resident seeking a driver's license to the reasonable condition of an implied consent to chemical testing under pain of civil license suspension following a DUI arrest. In accord with the Commonwealth's legitimate objective of combatting drunk driving, it may reasonably condition continuation of an operator's driving privilege upon the requirement to submit to a warrantless blood test following an arrest for DUI under pain of a civil license suspension. <u>Birchfield</u>; <u>Boseman</u>. The purpose of the exclusionary rule for Fourth Amendment violations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. <u>Terry</u>, <u>Mapp</u>; <u>Regula</u>. The Implied Consent Law does not authorize police officers to seize a person's blood without permission; instead, it imposes an ultimatum upon the DUI arrestee to either submit to the test or face the civil consequences. <u>Myers</u>. As such, a civil license suspension under the Implied Consent Law does not implicate Fourth Amendment rights. <u>Birchfield</u>; <u>Boseman</u>. Consequently, the unconstitutional conditions doctrine is inapplicable here.

### III. Conclusion

For the above reasons, we discern no error in the trial court's order denying Licensee's statutory appeal of his civil license suspension. Accordingly,

13

we affirm. Further, we grant DOT's request to reinstate the 18-month suspension of Licensee's operating privilege under 75 Pa. C.S. §1547(b)(1)(ii) within a reasonable time.[5]

_____

ROBERT SIMPSON, Judge

---

[5] By order dated December 13, 2016, the trial court stayed its order reinstating Licensee's suspension pending final resolution of his appeal to this Court. See Certified Record, Item #11.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Marchese,                          :
                 Appellant      :
                          :
            v.                        :     No. 1996 C.D. 2016
                          :
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing                 :

# O R D E R

**AND NOW**, this 13th day of September, 2017, the order of the Court of Common Pleas of Lycoming County is **AFFIRMED**. Further, the Department of Transportation, Bureau of Driver Licensing, is hereby directed to REINSTATE the 18-month suspension of Anthony Marchese's operating privilege under 75 Pa. C.S. §1547(b)(1)(ii) within a reasonable time.

---

ROBERT SIMPSON, Judge