IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Matthew P. Dec, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1276 C.D. 2021 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | Submitted: August 26, 2022 |

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                                                    FILED: November 18, 2022

Matthew P. Dec (Licensee) appeals, *pro se*, from the October 15, 2021 Order of the Court of Common Pleas of Butler County (Trial Court), which denied his statutory appeal from the 18-month suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT). DOT imposed the suspension due to Licensee's refusal to submit to chemical testing pursuant to Section 1547(b)(1)(ii) of the statute commonly known as the Implied Consent Law, 75 Pa. C.S. § 1547(b)(1)(ii),[1] in connection with his arrest for driving

---

[1] Section 1547(b)(1)(ii) provides in pertinent part:

(1)  If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle Code, 75 Pa. C.S. § 3802 (relating to driving under the influence of alcohol or a controlled substance),] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

. . . .

(ii)  For a period of 18 months if any of the following apply:

**(Footnote continued on next page…)**

under the influence of alcohol or a controlled substance (DUI).  We affirm the Trial Court's Order and dismiss as moot Licensee's Motion for Expedited Decision.

## Background

On September 25, 2020, Licensee was driving a pickup truck on Route 8 in Center Township, Butler County.  Trial Ct. 1925(a) Op., 1/7/22, at 1.  Pennsylvania State Trooper Matthew Stimac initiated a traffic stop of the truck for multiple traffic violations.  *Id.*  During the stop, Trooper Stimac observed an open container of alcohol inside the vehicle and smelled an odor of alcohol emanating from the vehicle.  *Id.*  A passenger inside the truck was also in possession of marijuana. *Id.* When Trooper Stimac asked Licensee if he had consumed any alcohol, Licensee responded that he had.  *Id.* at 1-2.

Trooper Stimac performed field sobriety and impaired driving enforcement tests at the scene, which indicated that Licensee was impaired.  *Id.* at 2.  Trooper Stimac placed Licensee under arrest for suspicion of DUI.  *Id.*  Trooper Stimac asked Licensee if he would submit to a drug recognition evaluation, and Licensee agreed. *Id.*

Trooper Stimac transported Licensee to the State Police barracks for further testing.  *Id.*  A portable breath test performed on Licensee was positive for alcohol. Pennsylvania State Trooper Philip Treadway, a certified drug recognition expert, evaluated Licensee.  The evaluation resulted in more than the required number of

---

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for[] . . . an offense under [S]ection 3802[] . . . .

75 Pa. C.S. § 1547(b)(1)(ii).

2

indicators to signify impairment.  *Id.*  Trooper Treadway concluded that Licensee was not capable of safely operating his vehicle due to impairment caused by alcohol and marijuana.  *Id.*

Licensee was then transported to Butler Memorial Hospital for a blood test. *Id.*  Trooper Treadway read the implied consent warnings on DOT's DL-26B Form[2] to Licensee, informing him of the consequences of refusing to consent to chemical testing.  *Id.*  Trooper Stimac observed Trooper Treadway read the DL-26B Form to Licensee.  *Id.*

After reading the required sections of the DL-26B Form, Trooper Treadway asked Licensee if he would submit to a chemical blood test.  *Id.*  Licensee stated that he would agree to a blood test only if the Troopers first obtained a search warrant. *Id.*  The Troopers deemed this response a refusal.  *Id.*  Both Troopers signed the DL-26B Form, certifying that they had read the implied consent warnings to Licensee

---

[2] The DL-26B Form warnings are as follows:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months.  If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months.  If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing.  If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DOT Br., App. A.

3

and had given him the opportunity to submit to chemical testing. Licensee refused to sign the DL-26B Form. *Id.*; *see* DOT Br., App. A.

On October 16, 2020, DOT notified Licensee that his operating privilege was suspended for 18 months, effective November 20, 2020, for his failure to submit to chemical testing on September 25, 2020. Licensee filed a statutory appeal with the Trial Court, which held a *de novo* hearing on October 15, 2021.[3]

Following the hearing, the Trial Court entered an Order denying Licensee's appeal. In its subsequent Pa.R.A.P. 1925(a) Opinion, the Trial Court rejected Licensee's assertion that the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), required the Troopers to obtain a search warrant before requesting a blood test. The Trial Court concluded that "[t]he statutes at issue before the *Birchfield* Court[] . . . were criminal statutes with criminal penalties, and not civil, administrative remedies," and, therefore, *Birchfield* does "not apply to civil license suspensions for refusal to submit to a chemical blood test." Trial Ct. 1925(a) Op., 1/7/22, at 3-4. The Trial Court also concluded that Licensee's "statement that he would not submit to a chemical blood test without the Troopers first procuring a search warrant constitute[d] a refusal to submit to chemical testing in violation of" the Implied Consent Law. *Id.* at 4. Licensee now appeals to this Court.[4]

---

[3] Licensee was not represented by counsel in the proceedings before the Trial Court.

[4] This Court's review is limited to determining whether the Trial Court committed an error of law or abused its discretion or whether the Trial Court's factual findings are supported by substantial evidence. *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 n.3 (Pa. Cmwlth. 2008).

## Issues

Licensee presents three issues for this Court's review: (1) whether the Trial Court erred in concluding that Trooper Treadway was not required to obtain a search warrant before requesting a blood sample from Licensee; (2) whether the Trial Court erred in finding that Licensee refused chemical testing when he asked Trooper Treadway to obtain a search warrant after reading the implied consent warnings to Licensee; and (3) whether the Troopers committed a federal crime by punishing Licensee for requesting that they obtain a search warrant before requesting a blood sample.

## Analysis

### 1. Search Warrant

Relying on *Birchfield*, Licensee first asserts that "a warrant is required to draw blood from a motorist thereby nullifying the 'Implied Consent' doctrine that was formally observed within this Commonwealth." Licensee Am. Br. at 6. We disagree.

In *Birchfield*, the Supreme Court, applying a Fourth Amendment analysis, reviewed state laws in North Dakota and Minnesota that made it a crime for a motorist arrested for DUI to refuse a warrantless blood test. The *Birchfield* Court held that a state may not criminally prosecute a motorist for refusing a request for a warrantless blood test following a DUI arrest. In Pennsylvania, however, a licensee arrested for DUI has a right to refuse chemical testing, *see* 75 Pa. C.S. § 1547(b)(1) and (b.1)(1); *Com. v. Eisenhart*, 611 A.2d 681, 684 (Pa. 1992),[5] and it is not a crime for a licensee arrested for DUI to refuse chemical testing. Consequently, *Birchfield* is distinguishable. In fact, the Supreme Court expressly limited its holding to

---

[5] *Eisenhart* was subsequently overruled in part on other grounds by *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2016).

implied consent laws imposing criminal penalties, stating that "nothing we say here should be read to cast doubt on" state "implied[ ]consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Birchfield*, 579 U.S. at 476-77.

Furthermore, in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), this Court held that *Birchfield* is inapplicable to a civil license suspension imposed by DOT for a licensee's refusal to submit to a blood test under the Implied Consent Law. We explained:

> [A] license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding from a criminal DUI proceeding arising out of the same incident. It is not a crime to refuse chemical testing under Pennsylvania's Implied Consent Law.
>
> . . . .
>
> . . . *Birchfield* addressed the constitutionality of a [s]tate statute that made it a *crime* to refuse a warrantless blood test after being arrested for DUI. In short, *although Birchfield may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on a refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law*. Consequently, [the l]icensee's Fourth Amendment challenge to the Implied Consent Law fails.

*Boseman*, 157 A.3d at 21 (internal citation omitted) (second emphasis added).

This Court has repeatedly reaffirmed its holding in *Boseman* in subsequent decisions. *See, e.g.*, *Patane v. Dep't of Transp., Bureau of Driver Licensing*, 192 A.3d 335, 349 (Pa. Cmwlth. 2018) (*en banc*) ("We reiterate here again that *Birchfield* does not apply to civil license suspension proceedings."); *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 651 (Pa. Cmwlth. 2018) (*en banc*) ("Consistent with our decisions in *Boseman* and *Marchese [v. Department of*

*Transportation, Bureau of Driver Licensing*, 169 A.3d 733 (Pa. Cmwlth. 2017)], we conclude that the trial court did not err by holding that *Birchfield* does not apply to civil license suspensions."); *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1037 (Pa. Cmwlth. 2018) (*en banc*) ("We have held that *Birchfield* does not invalidate a civil license suspension based on an argument that a warrant was required to obtain the requested blood test."); *Fetherman v. Dep't of Transp., Bureau of Driver Licensing*, 167 A.3d 846, 854 (Pa. Cmwlth. 2017) ("*Birchfield*, by its own language, does not apply to civil suspensions under Pennsylvania's Implied Consent Law."). Consistent with this binding precedent, we conclude that *Birchfield* is inapplicable to this case, and, therefore, Trooper Treadway was not required to obtain a search warrant before requesting that Licensee submit to a blood test.

## 2. Chemical Test Refusal

Next, Licensee asserts that he never actually refused a chemical blood test because he merely asked Trooper Treadway to first obtain a search warrant. Licensee Am. Br. at 7. We disagree.

It is well settled that when a police officer requests one of the chemical tests authorized by the Implied Consent Law, "any response from a licensee that is *'anything less than an unqualified, unequivocal assent'* to submit to testing *constitutes a refusal*." *Todd v. Dep't of Transp., Bureau of Driver Licensing*, 723 A.2d 655, 658 (Pa. 1999) (citation omitted) (emphasis added); *see also Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) ("Pennsylvania courts have long and consistently held that anything less than

an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto.").[6]

Here, Licensee did not reply affirmatively when Trooper Treadway asked that he submit to a blood test. Instead, Licensee insisted that Trooper Treadway first obtain a search warrant. Because Licensee had no right to demand a search warrant, as explained above, his demand for a search warrant was not "an unqualified, unequivocal assent" to submit to the blood test under our case law. Therefore, the Trial Court correctly determined that Licensee refused chemical testing when he did not consent to Trooper Treadway's request for a blood test at the hospital.

### 3. Federal Crime

Lastly, Licensee asserts that two federal statutes – 18 U.S.C. § 241 (relating to conspiracy against rights) and 18 U.S.C. § 242 (relating to deprivation of rights under color of law)[7] – make it a federal crime for police officers to threaten and

---

[6] "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015).

[7] 18 U.S.C. § 241 provides in relevant part:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same[] . . . [t]hey shall be fined under this title or imprisoned not more than ten years, or both[] . . . .

18 U.S.C. § 242 provides in relevant part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different

**(Footnote continued on next page…)**

8

punish a person "for exercising [his c]onstitutional [r]ight to request a warrant." Licensee Am. Br. at 11. In particular, he contends that "[t]o civilly punish a citizen for the 'infraction' of exercising [his r]ight to request a warrant prior to consenting to [a] blood draw is a violation of the 5th Amendment" to the United States Constitution. *Id.* at 5, 12. We conclude that Licensee has waived this claim.

Licensee did not raise this issue in the proceedings before the Trial Court. Licensee also failed to raise this issue in his Pa.R.A.P. 1925(b) Statement, and, as a result, the Trial Court did not address the issue in its Pa.R.A.P. 1925(a) Opinion. Therefore, this issue is waived. *See* Pa.R.A.P. 302(a) ("[I]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in the appellant's Pa.R.A.P. 1925(b) statement are waived).

## Conclusion

Accordingly, we affirm the Trial Court's Order and dismiss as moot Licensee's Motion to Expedite Decision.

---

punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both[] . . . .

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew P. Dec,                 :
           Appellant       :
                                       :
       v.                      : No. 1276 C.D. 2021
                                       :
Commonwealth of Pennsylvania,  :
Department of Transportation,     :
Bureau of Driver Licensing        :

**PER CURIAM**

**O R D E R**

AND NOW, this 18th day of November, 2022, the October 15, 2021 Order of the Court of Common Pleas of Butler County is hereby AFFIRMED, and Matthew P. Dec's Motion to Expedite Decision is hereby DISMISSED AS MOOT.